IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JOSHUA B. YOUNG | § | |
| VS. | § | CIVIL ACTION NO. 1:12cv539 |
| DIRECTOR, TDCJ-CID | § | |

## MEMORANDUM OPINION

Petitioner Joshua B. Young, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### Factual Background

Petitioner was previously charged with seven counts of attempted capital murder of a peace officer and seven counts of aggravated assault on a peace officer with a deadly weapon in the 75th District Court of Liberty County, Texas. Prior to closing arguments, the prosecution abandoned its attempt to convict petitioner of the attempted capital murder charges. The jury found petitioner guilty of five counts of aggravated assault on a peace officer and not guilty of two counts. He was sentenced to life imprisonment. The convictions and sentence were affirmed by the Texas Court of Appeals for the Ninth District. Petitioner did not file a petition for discretionary reviews.

Petitioner subsequently filed an application for writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order.

## Grounds for Review

Petitioner asserts the following grounds for review: (1) there was prosecutorial misconduct because the prosecutor: (a) injected new and harmful evidence during his closing argument; (b) used perjured testimony and (c) failed to correct perjured testimony; (2) there was insufficient evidence to support his convictions; (3) the trial court erred by: (a) permitting the spouse of a witness to act as bailiff during the trial and (b) allowing the prosecutor to reveal petitioner's criminal record and (4) he received ineffective assistance of counsel because counsel failed to strike a retired 35 year veteran police captain from the jury.

## Evidence at Trial

In its opinion, the intermediate appellate court described the evidence introduced at trial as follows:

> Petitioner, his girlfriend (Stephanie Moye), and their friend (Brett Edwards) had been taking methamphetamiines for several days and fell asleep inside a trailer on [petitioner's] family property in Liberty County. A captain with the Liberty County Sheriff's Office received information from numerous sources that Young might be uncooperative if law enforcement authorities attempted to execute an outstanding warrant for his arrest. Officers arrived at the trailer after dark to execute the warrants for the arrest of Young and Moye. The officers announced their presence. When the lights were turned off in the trailer, the officers retreated. During the all-night standoff, shots were fired from inside the trailer. The officers did not return fire. [Petitioner], Moye, and Edwards were ultimately forced out of the trailer with gas. No officers were injured. Moye, [petitioner], and Edwards were taken into custody. After being questioned and submitting to a gun residue test, Edwards was released.
>
> Spent shell casings from a 12-gauge round were located inside the trailer. Several parts of a disassembled shotgun were found concealed in different areas. [Petitioner], Edwards, and Moye were swabbed for DNA testing. Fingerprint and DNA analysis did not link any of them to the

gun.

Stephanie Moye testified that when the Liberty County police announced their presence, she saw [petitioner] turn off the light and grab his loaded shotgun. Moye stated that Edwards pulled her down off the bed and they got beside each other on the floor. She explained that [petitioner]fired several shots. No one returned fire. She testified that she did not shoot the gun that night. She knows Edwards did not shoot the gun because he was right next to her. She explained that she knows [petitioner] shot the gun because, even though it was dark, the muzzle flash when the gun was fired provided enough light for her to see [petitioner's] face.

Brett Edwards testified he was awakened by a gunshot coming from inside the trailer, and he "[s]at Moye down on the ground." He heard five to ten gunshots from inside the trailer during the night. He claimed he did not shoot the gun, and he knew Moye did not shoot the gun because she was on the floor and was scared. Edwards testified he never saw who shot a gun that night because it was dark. Common sense told him that [petitioner] must have been the shooter. Edwards said that no gunshots came from outside the trailer. During the night no one in the trailer said anything. He did not know that police were outside until the tear gas forced him out of the trailer the next morning. He said that after the incident he had a conversation with [petitioner] while [petitioner] was incarcerated. [Petitioner] told Edwards that if Edwards took the blame he would probably get probation since it would be his first offense. Edwards testified he did not take the blame because he did not shoot the gun that night.

Jo Janna Gipson, Moye's mother testified that about a week prior to the incident she talked to [petitioner]. She indicated that at the time there was a warrant out for [his] arrest. Young said he would not go to jail but would "start shooting first." Fearing for her daughter's safety, Gipson contacted a friend who was a detective with the Liberty County Sheriff's Department, Gipson's prior employer, to inform the detective of [petitioner's] statement. Although Gipson testified she contacted the detective on October 9, 2008, which would have been the day after the shooting, Gipson later testified that she contacted him before the shooting because she did not want her daughter to get in a shootout. Gipson testified that some of the Liberty County Sheriff's Department officers had known Moye since she was a little girl. Gipson also testified that a couple of weeks after the shooting, she visited [petitioner] in jail. He indicated to Gipson that

3

> pieces of the gun were still in the trailer. He asked Gipson to retrieve the pieces of the gun. She did not report this to law enforcement.
>
> Five police officers testified that they were attempting to serve a warrant for [petitioner] that night and that shots from inside the trailer hit in their immediate vicinity and threatened them with imminent bodily injury.

## Standard of Review

Consideration of a habeas petition filed in federal court is limited to the highly deferential review standard afford to state court adjudications under the Antiterrorism and Effective Death Penalty Act ("AEDPA). 28 U.S.C. § 2254. *See Hearn v. Thaler*, 669 F.3d 265, 271 (5th Cir. 2012) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks and citation omitted). Under the AEDPA, a federal court may not grant habeas relief on a claim that was adjudicated on the merits by a state court unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the fats in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). "Clearly established Federal law" refers to holdings of the Supreme Court at the time of the state court's decision. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). Factual findings by the state court "are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence." *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005).

A state court decision involves an unreasonable application of federal law if it "correctly identifies the governing legal rules but applies it unreasonably to the facts of a particular prisoner's case." *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting *Williams*, 529 U.S. at 407-08). In evaluating whether a state court's application of a rule was unreasonable, the specificity of the rule must be considered. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *See Williams*, 529 U.S. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonale." *Id*. The Supreme court has noted that this standard is difficult to meet ... because it was meant to be." *Id*.

### Analysis

*Prosecutorial Misconduct*

A. <u>Asserting New and Harmful Information During Closing Argument</u>

Petitioner states that during closing argument, the prosecutor made the following statement: "Joshua Young, after he fired that

5

gun, wiped it down, disassembled it, and hid it." Petitioner asserts this statement was improper because there was no evidence in the record to support it.

Under Texas law, "[p]ermissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction of the evidence; (3) answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Cannady v. State*, 11 S.W.3d 205, 213 (Tex.Crim.App. 2000).

At trial, Ms. Moye testified that she saw petitioner shoot the firearm and that she did not disassemble the gun. Mr. Edwards testified that neither he nor Ms. Moye shot the firearm and that he did not know who disassembled the firearm. As described above, Ms. Gipson testified that a couple of weeks after his arrest, petitioner asked her to go back to the house to retrieve pieces of the firearm that had not been found by the sheriff's office. Further, Sergeant Mark Ellington testified that pieces of the shotgun were found hidden at various places inside the trailer and that the only print found on the gun did not match petitioner's prints.

Based on this testimony, the prosecutor's statement that after petitioner shot the gun he wiped it clean, disassembled it and hid the pieces were reasonable deductions from the evidence. Accordingly, the statement was not improper. This ground for review is therefore without merit.

B. Use of Perjured Tesimony

Petitioner states that while testifying before the grand jury, Stephanie Moye stated petitioner did not commit the crimes with which he was charged. He states the prosecutor improperly offered her immunity from any perjury charges regarding her grand jury testimony if she would alter her testimony at trial and state that petitioner was guilty. Petitioner contends the prosecution knew Ms. Moye's trial testimony was false.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). To prove such a violation, a habeas petitioner must demonstrate that (1) the testimony was actually false; (2) the state knew it was false and (3) the testimony was material. *Id*.

Ms. Moye's testimony changed over time. While her grand jury testimony was exculpatory, her trial testimony was highly inculpatory. The prosecution gave Ms. Moye immunity from any prosecution for perjury based on her grand jury testimony. This was made clear in a letter from the prosecution to defense counsel, who cross-examined her about the change in her testimony. The prosecution's letter was read to the jury.

While Ms. Moye's testimony did change, there is nothing in the record to indicate the prosecution believed her grand jury testimony was true and her trial testimony was false. In the absence of any such evidence, it cannot be concluded the prosecution knowingly used false testimony. Further, if the

7

prosecutor believe Ms. Moye's trial testimony was true, it would not have been improper to offer her immunity to a charge of perjury based on her recanted grand jury testimony. Petitioner has submitted no evidence demonstrating that the prosecution took any steps to improperly coerce Ms. Moye to change her testimony.

    C. <u>Failure to Correct Perjured Testimony</u>

The incident at issue during the trial occurred on October 8. During her direct testimony Jo Janna Gipson testified petitioner had told her that he would shoot at the police if they tried to apprehend him. During cross-examination, she stated petitioner had told her this on October 2, and that she had told a detective about this the day after, on October 9. During the prosecution's redirect examination, she testified that she had told the detective about petitioner's statement before the shooting took place. Petitioner asserts that even though the prosecution knew she contacted the detective after the shooting, the prosecution failed to correct her testimony on redirect examination. He states the prosecution subsequently acknowledged that the testimony was false by stipulating that she did not tell the detective about petitioner's statement until after the shooting, but failed to take steps to correct Ms. Gipson's testimony.

Petitioner correctly describes the testimony of Ms. Gipson. On cross-examination, she stated petitioner made his statement to her on October 2, before the shooting, and that she told a detective about the statement on "[t]he next day, the 9th," which would have been after the shooting. On redirect examination, she

8

stated that she told the detective about petitioner's statement before the shooting. However, petitioner mischaracterizes a statement by the prosecutor. The prosecutor did not stipulate that Ms. Gipson told the detective about petitioner's statement after the shooting. Instead, the prosecution stipulated that the written statement memorializing what Ms. Gipson told the detective was not prepared until after the shooting.

After reviewing the transcript, the court is unable to concluded the prosecution believed Ms. Gipson was testifying falsely when she testified she told a detective about petitioner's statement before the shooting. The fairest reading of Ms. Gipson's testimony is that she told the detective about the statement on October 3, the day after petitioner made the statement to her. This reading is supported by the fact that she stated both during cross-examination and on redirect that she described the statement to a detective before the shooting. She appears to have misspoke when she stated she told the detective about the statement on the next day, "the 9th."

As stated above, in order to establish prosecutorial misconduct, petitioner must show the prosecution knew Ms. Gipson was providing false testimony when she stated she told the detective about petitioner's statement prior to the shooting. Petitioner has failed to made this showing. Instead, the record reflects the prosecution thought Ms. Gipson believed she told the detective about the statement prior to the shooting and misspoke she supplied a date that was after the shooting. While the jury

would have been free to conclude either that she told the detective before the shooting or after the shooting, it cannot be concluded the prosecution believed Ms. Gipson was testifying falsely when she stated she told the detective before the shooting. This ground for review is therefore without merit.

*Insufficient Evidence*

Petitioner argues that there was not sufficient evidence to support his convictions. He contends there was no evidence that he used or exhibited a firearm during the assault. He states that the only evidence that he used or exhibited a firearm was testimony from Stephanie Moye. He states that as Ms. Moye was originally also charged with aggravated assault, Article 38.14 of the Texas Code of Criminal Procedure required that her testimony be corroborated. Further, he asserts that as Ms. Moye testified before two different juries to two different version of the events, her testimony at trial did not constitute evidence.

Claims regarding sufficiency of the evidence are reviewed under the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The inquiry to be used with such claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320.

Petitioner asserted this ground for review on direct appeal. In considering the ground for review, the intermediate appellate court stated as follows:

10

To support the convictions, the State was required to prove that Young intentionally or knowingly threatened the peace officers with imminent bodily injury by using or exhibiting a deadly weapon during the commission of the assault, that the peace officers were public servants, that Young knew the officers were public servants, and that the public servants were lawfully discharging an official duty when the offenses were committed. Young argues that the only evidence that he exhibited a firearm was elicited through Moye's testimony. He maintains that her testimony should have been excluded because she made an inconsistent statement to the grand jury. Young also argues Gipson lied when she testified that they had a conversation about his outstanding warrants. He also asserts that he did not tell her "he would not go to jail [but] ... would start shooting first." He argues that this testimony was improperly admitted over his obections.

Moye testified she saw Young shoot the gun, and Edwards testified that Young had to have been the shooter. Although there was no physical evidence linking Young to the gun, pieces of the gun were retrieved from his home on the same property where his father and grandfather lived. Gipson testified that Young wanted her to retrieve the pieces of the gun that were not found by law enforcement. The jury also heard evidence that Young spoke with Edwards after the shooting and told him that if he took the blame he would get only probation. Although Jacobs testified that Edwards stated he was the shooter, Jacobs never reported the comment to the police even though Young had been arrested for the crime. The jury could reasonably believe Edwards and disbelieved Jacobs. Although Young challenges the consistency of Moye's testimony and Gipson's testimony, we must give deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. The evidence is sufficient to support the jury's verictsurance.

After considering the record, it cannot be concluded that the conclusion of the intermediate appellate court was contrary to, or involved an unreasonable application of, clearly established federal law. Viewing the evidence in a light most favorable to the verdict, there was sufficient evidence to permit a rational trier of fact to find each essential element of the offenses beyond a

reasonable doubt.[1]

*Errors by Trial Court*

A. <u>Permitting Spouse of Witness to Act as Baliff</u>

Petitioner states that the court's acting bailiff was the wife of one of the prosecution's leading witnesses who testified that petitioner had attempted to assault him. He contends that the wife of a leading witness should not have been allowed to have direct contact with the jurors inside and outside of the jury room to prejudice the jurors.

There is no indication in the record that the acting bailiff made any improper comments to the jury. Further, petitioner does not specifically allege the acting bailiff made any improper comments, but simply points out that she was in a position to have done so. It was probably not the best practice to permit the wife of a prosecution witness to interact with the jury. However, in the absence of any evidence of misconduct on the part of the acting bailiff during her interactions with the jury, it cannot be

---

[1] Petitioner also asserts that the only evidence that he used or exhibited a weapon during the commission of the assault was Ms. Moye's testimony. He contends the evidence was insufficient because Texas law prohibits a conviction based on the uncorroborated testimony of any accomplice. However, as the opinion of the intermediate appellate makes clear, Ms. Moye's testimony was not the only evidence demonstrating petitioner used or exhibited a weapon. Moreover, even if her testimony was the only evidence that petitioner used or exhibited a weapon, he would still not be entitled to relief. Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction may not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." However, while Texas law requires corroboration of the testimony of an accomplice-witness, the United States Constitution does not impose a similar restriction on the use of accomplice-witness testimony. *Brown v. Collins*, 937 F.3d 182 n. 12 (5th Cir. 1991). As a result, a violation of the accomplice-witness rule would not provide a basis for federal habeas relief. *Ramirez v. Dretke*, 398 F.3d 691, 695 n. 4 (5th Cir. 2005).

concluded petitioner suffered any prejudice as a result of her acting as bailiff. This ground for review is therefore without merit.

    B.  <u>Allowing Prosecutor to Comment on Petitioner's Record</u>

Petitioner states that the court granted a motion *in limine* preventing the introduction of evidence concerning prior convictions during the guilt/innocence phase of the proceeding. Despite this ruling, the prosecutor asked a detective whether petitioner's father had told him petitioner was not going back to prison. The trial court sustained an objection to the question. The court gave the jury an instruction concerning the question, but denied a request for a mistrial. The next witness, a police officer, said that officers were preparing to execute a warrant for petitioner based on a parole violation. An objection was again sustained, but a request for a mistrial was denied. Petitioner asserts the trial court erred by failing to grant the motions for a mistrial.

A trial court's decision denying a motion for mistrial justifies federal habeas relief only if it constituted an error so extreme as to constitute a denial of fundamental fairness under the Due Process Clause. *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (citing *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). To obtain relief, a petitioner must show that the trial court's alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). This standard has

been applied to cases where the jury was exposed to evidence of extraneous bad acts or crimes. *Dorsey v. Quarterman*, 494 F.3d 527, 531 (5th Cir. 2007).

After the statement by the detective, the court gave the jury the following instruction: "Ladies and gentlemen of the jury, you are to disregard the statement that was made to the witness concerning anything about prison. You are to disregard it totally, not to consider it for any reason." After the statement regarding the parole violation, the court gave th following instruction: "Ladies and gentlemen of the jury, you are to disregard any reference to parole. You cannot-you're to disregard it and not to consider it for any reason."

The jury is presumed to have followed the trial court's instruction not to consider the offending testimony. *Galvan v. Cockrell*, 293 F.3d 760, 766 (5th Cir. 2002). In light of the strong instructions immediately given by the court and the presumption that the jury followed these instructions, it cannot be concluded that the trial court's denial of defense counsel's requests for a mistrial had a substantial and injurious effect or influence in determining the jury's verdict. The conclusion of the state courts on this point therefore was not contrary to, and did not constitute an unreasonable application of, clearly established federal law.

*Ineffective Assistance of Counsel*

Petitioner states that when defense counsel asked during *voir dire* whether any members of jury panel were related to anyone in

14

law enforcement, several members gave affirmative responses.  One member, panel member number 28, said he had been a police officer for 35 years in Pasadena and had retired with the rank of captain. Defense Counsel asked him whether he might give a little more credence to testimony from a police officer than to testimony from a lay person.  The panel member replied by stating: "I was a Captain for the last 30 years, and I had about 200 officers working for me.  I know they lie to you."  Petitioner asserts counsel should have asked additional question to explore the panel member's biases and prejudices, including how he felt about police officers being shot at.

A claim of ineffective assistance of counsel is reviewed under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  "First, a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (quoting *Strickland*, 466 U.S. at 688).  Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test.  *See*

15

*Strickland*, 466 U.S. at 687-97.

Petitioner raised this ground for review on direct appeal. In considering this ground, the intermediate appellate court stated as follows:

> Defense counsel questioned the entire panel extensively about potential biases or prejudices, and venire member #28 did not give any responses that would give rise to concern about his ability to be fair. The following exchange occurred when defense counsel questioned the venire panel regarding whether anyone was related to law enforcement:
>
> VENIRE MEMBER #28: I'm not related; but I was a police officer, a captain for 35 years in Pasadena.
>
> DEFENSE COUNSEL: In Pasadena?
>
> VENIRE MEMBER #28: I have been retired five years.
>
> DEFENSE COUNSEL: Excellent. Fair to say you might give a little more credence to the police over a lay person?
>
> VENIRE MEMBER #28: I was a captain for the last 20 years, and I had about 2000 officers that worked for me. I know that they lie to you.
>
> DEFENSE COUNSEL: You heard it here first. Police lie. We're all subject to our biases. I will put it politely. All right. Thank you.
>
> On this record, we cannot say Young's counsel was ineffective for failing to question venire member #28 further, or for failing to challenge him for cause.

The ruling of the state court on this point was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Several police officers testified during the trial. Based on the statement by venire member number 28 concerning the veracity of police officers, counsel could have reasonably believed it would be useful to have someone on the jury who might view the testimony of police officers with an experienced

16

and somewhat jaundiced eye.  As a result, counsel's failure to question this venire person further did not fall below an objective standard of reasonableness.  In addition, the statement by the venire member concerning his opinion regarding the credibility of police officers prevents the conclusion that petitioner suffered prejudice as a result of the venire member serving on the jury.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit and will be denied.  An appropriate final judgment shall be entered.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability.  An appeal from a judgment denying federal habeas relief may not proceed unless a certificate of appealability is issued.  *See* 28 U.S.C. § 2253.  The standard for a certificate of appealability requires the petitioner to make a substantial showing of the denial of a federal constitutional right.  *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Elizalde v. Dretke*, 362 F.3d 323 (5th Cir. 2004).  To make a substantial showing, the petitioner need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues raised are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84.  Any doubts regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner.  *See Miller v. Johnson*, 200 F.3d 272 (5th Cir.

2000).

In this case, petitioner has not shown that any of the issues he raised are subject to debate among jurists of reason. The factual and legal issues asserted by petitioner are not novel and have been consistently resolved adversely to his position. In addition, the issues raised are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not issue in this matter.

**SIGNED** this the **29** day of **March, 2016.**

_____
Thad Heartfield
United States District Judge